UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA BENN,<br><br>                Plaintiff,<br><br>      v.<br><br>CITY OF NEW YORK,<br>POLICE OFFICER ALEXANDER<br>SOSA (Shield No. 2549), and<br>POLICE OFFICER DOES 1-10,<br><br>                Defendants. | Case No. 12-CIV-2041 (KBF) (MHD)<br><br>ECF CASE<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW THE PLAINTIFF, Linda Benn, by her attorney, Steven M. Warshawsky, for her complaint against the defendants and alleging as follows:

## NATURE OF THE CASE

1.  This is a civil rights action under 42 U.S.C. § 1983 and New York state law arising from the warrantless entry and search of the plaintiff's apartment on August 17, 2011, and the plaintiff's arrest that same day without probable cause. The plaintiff is entitled to compensatory damages for the harms she has suffered as a result of the defendants' unlawful actions, punitive damages to punish and deter the defendants from engaging in similar unlawful actions in the future, and reasonable attorney's fees and costs. The plaintiff demands trial by jury on all of her claims.

## PARTIES

2.  Plaintiff **Linda Benn** is a citizen of New York, and resides in New York, New York. At the time of the events in this case, Ms. Benn was 60 years old. Ms. Benn is a

-1-

-2-

retired employee of the New York State Department of Corrections, where she worked for approximately 16 years. She does not have a criminal record. She does not use or sell illegal drugs. She does not receive public assistance.

3. Defendant **City of New York** is a municipality of the State of New York. The Corporation Counsel of NYC is Michael A. Cardozo. The main office of the Corporation Counsel is located at 100 Church Street, New York, New York, 10007. The NYPD is an agency or instrumentality of the City of New York. The City of New York is being sued in its municipal capacity under 42 U.S.C. § 1983, pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), and under New York state law, pursuant to the doctrine of respondeat superior.

4. Defendant Police Officer **Alexander Sosa** (Shield No. 2549) is an employee of the New York City Police Department. Upon information and belief, Officer Sosa is assigned to the Manhattan North Narcotics Bureau. Upon information and belief, his place of business is the NYPD 30th Precinct located at 451 West 151st Street, New York, New York, 10031; (212) 690-8811. Officer Sosa personally participated in the unlawful search of the plaintiff's apartment and plaintiff's unlawful arrest on August 17, 2011. At all relevant times, Officer Sosa was acting under color of state law and in the scope of his employment with the NYPD. Officer Sosa is being sued in his individual capacity under 42 U.S.C. § 1983 and New York state law.

5. Defendants **Police Officer Does 1-10** (shield numbers unknown) are employees of the New York City Police Department. Upon information and belief, Police Officer Does 1-10 are assigned to the Manhattan North Narcotics Bureau. Upon information and belief, their place of business is the NYPD 30th Precinct located at 451 West 151st Street, New York, New York, 10031; (212) 690-8811. Police Officer Does 1-10 personally participated in

the unlawful search of the plaintiff's apartment and plaintiff's unlawful arrest on August 17, 2011. At all relevant times, Police Officer Does 1-10 were acting under color of state law and in the scope of their employment with the NYPD. Police Officer Does 1-10 are being sued in their individual capacities under 42 U.S.C. § 1983 and New York state law.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because this action arises under the Constitution and civil rights laws of the United States.

7. This Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because the plaintiff's federal and state law claims derive from a common nucleus of operative facts and form part of the same case or controversy under Article III of the U.S. Constitution.

8. This Court has venue over this action pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this action occurred in this district.

9. There are no administrative exhaustion requirements for bringing the present civil rights action under 42 U.S.C. § 1983.

10. The plaintiff served a valid notice of claim on the New York City Comptroller's Office via certified mail on November 15, 2011, within 90 days of the incident. The plaintiff's 50-h hearing was conducted on December 27, 2011. The plaintiff provided the city with an executed HIPAA authorization on or about February 10, 2012. To date, the city has neglected or refused to settle this matter administratively. This action is being brought more than

30 days after the notice of claim was served on the city and within one year and 90 days after the incident.

## FACTUAL ALLEGATIONS

11.     The events in this case took place in the morning of Wednesday, August 17, 2011.  Ms. Benn was in her apartment located at 830 St. Nicholas Avenue in Manhattan.  She was sleeping in her bedroom.  Ms. Benn lives alone.  No other person was inside the apartment that morning.

12.     Around 6:00 a.m., Ms. Benn was awakened suddenly by a loud banging sound coming from outside her bedroom.  The loud banging sound was Officer Sosa and several other police officers breaking the lock on Ms. Benn's front door and forcibly entering her apartment.  The officers did not knock or call out or otherwise attempt to communicate with Ms. Benn before entering her apartment.

13.     Within seconds, two police officers in SWAT gear stormed into Ms. Benn's bedroom, pointing their guns straight at Ms. Benn and yelling at her to get out of bed.  Ms. Benn was terrified and confused.  She did not know what was happening.  Apparently noticing that Ms. Benn is a woman, the SWAT officers yelled at her, "Do you have any panties on?"  As Ms. Benn started to get out of bed, the SWAT officers yelled for a female police officer to come into the bedroom.  At that time, the remaining police officers, approximately seven in number, all in street clothes, entered the room.  Officer Sosa accompanied them and was in charge of the operation.

14.     Ms. Benn was sitting on the side of her bed with her hands on top of her head, crying.  She asked the officers, "What are you doing in my house?"  Officer Sosa snapped at her, "You're selling drugs."  This shocked Ms. Benn, who denied the accusation and insisted,

"You have the wrong apartment, I don't sell drugs." But Officer Sosa would not listen, and kept saying to her, "Don't tell me, I know."

15. The police officers remained inside Ms. Benn's apartment for approximately one and one-half hours. They searched the entire apartment, including every room, every closet, every drawer, every item. They made a mess of the apartment. They even broke open and searched inside the control panel on Ms. Benn's treadmill. One of the officers stole a cherished ink pen set that had been given to Ms. Benn as a gift on her retirement.

16. No illegal drugs or illegal weapons or other contraband was found in Ms. Benn's apartment by the police officers.

17. During the search of her apartment, Ms. Benn was confined to her bedroom, guarded by the female police officer. Ms. Benn repeatedly asked the female officer to see the warrant for the search. The officer kept telling her, "Don't worry, we wouldn't be here if we didn't have permission."

18. The police officers never showed any kind of warrant to Ms. Benn.

19. Upon information and belief, the police officers did not have a valid warrant to enter and search Ms. Benn's apartment.

20. Ms. Benn did not consent to the police officers' entry and search of her apartment.

21. There were no exigent circumstances justifying the police officers' entry and search of Ms. Benn's apartment.

22. Officer Sosa and the other police officers intentionally and maliciously abused their power as police officers in entering and searching Ms. Benn's apartment.

23. Eventually Officer Sosa went to Ms. Benn and admitted, "I don't want you, I want your no good son." Ms. Benn has a son named Andre, who is 42 years old and lives in a different apartment located at 832 St. Nicholas Avenue in Manhattan. Andre does not live with Ms. Benn. Officer Sosa repeatedly questioned Ms. Benn about Andre's whereabouts, asking her over and over again, "Is he in 2 Charlie?" This refers to Andre's apartment number, 2C, in the other apartment building where he lived. Clearly, Officer Sosa knew where Andre lived, even before he and the other officers broke into and ransacked Ms. Benn's apartment.

24. Officer Sosa then threatened to arrest Ms. Benn if she did not telephone Andre, lie to him that she was sick, and ask him to come over to her apartment. There was no probable cause or other legal justification for threatening to arrest Ms. Benn. Officer Sosa intentionally and maliciously abused his power as a police officer in threatening to arrest Ms. Benn.

25. Scared and under extreme duress, Ms. Benn made the deceptive telephone call, as Officer Sosa demanded. She spoke with Andre's girlfriend, who sounded skeptical of Ms. Benn's story. Upon information and belief, by this time Officer Sosa and other police officers were waiting in the hallway outside Andre's apartment and arrested him when he exited the apartment.

26. A short time later, Officer Sosa returned to Ms. Benn's apartment, told her "we got him," and then placed Ms. Benn under arrest.

27. There was no probable cause or other legal justification for Ms. Benn's arrest. Officer Sosa intentionally and maliciously abused his power as a police officer in arresting Ms. Benn.

28. When Ms. Benn asked why she was being arrested, Officer Sosa claimed that he found a "trace" of marijuana in her apartment. He never showed her the alleged marijuana or told her where he found it.

29. Upon information and belief, there was no marijuana. Officer Sosa lied about the marijuana as a pretext for arresting Ms. Benn in order to cover up his illegal entry and search of her apartment.

30. Ms. Benn then was escorted across the street to the NYPD 30th Precinct, where she was fingerprinted and photographed (around 8:45 a.m.), then placed in an interrogation room and held for more than two hours until she was released.

31. Eventually Officer Sosa told Ms. Benn that her prints came back negative and issued her a desk appearance ticket (around 11:15 a.m.), charging her with criminal possession of a controlled substance in the seventh degree (P.L. 220.03) and criminally using drug paraphernalia in the second degree (P.L. 220.50). These charges were false. Officer Sosa intentionally and maliciously abused his power as a police officer in charging Ms. Benn with these crimes.

32. Ms. Benn appeared as ordered in Manhattan Criminal Court on September 20, 2011. At her appearance, she was advised by the District Attorney's Office that her case was "not ready to proceed at this time." Subsequently, on December 19, 2011, the District Attorney's Office notified Ms. Benn that "the case was declined to prosecute," that the criminal complaint and photograph "were destroyed," and that the fingerprints "are sealed and suppressed."

## COUNT ONE:  UNLAWFUL SEARCH
### (Section 1983; Officer Sosa, Police Officer Does 1-10)

33. The plaintiff repeats and re-alleges Paragraphs 1-32 above.

34. At all times relevant herein, Officer Sosa and Police Officer Does 1-10 were acting under color of state law.

35. Officer Sosa and Police Officer Does 1-10 violated the plaintiff's rights under the Fourth Amendment when they entered and searched the plaintiff's home without a warrant, without consent, and in the absence of exigent circumstances.

36. Officer Sosa and Police Officer Does 1-10 are not entitled to qualified immunity.

37. The plaintiff's rights under the Fourth Amendment were clearly established.

38. It was not objectively reasonable for Officer Sosa and Police Officer Does 1-10 to believe that their actions did not violate the plaintiff's rights under the Fourth Amendment.

39. Officer Sosa and Police Officer Does 1-10 acted with intentional, knowing, callous, and/or reckless indifference to the plaintiff's rights when they entered and searched her home.

40. As a result of the defendants' unconstitutional conduct, the plaintiff has suffered loss of liberty, mental anguish, emotional distress, insult, embarrassment, humiliation, loss of enjoyment of life, property damage, and other compensable injuries, for which she is entitled to an award of compensatory damages.

41. The plaintiff also is entitled to an award of punitive damages to punish the police officer defendants for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

### COUNT TWO:  FALSE IMPRISONMENT/FALSE ARREST
### (Section 1983; Officer Sosa, Police Officer Does 1-10)

42. The plaintiff repeats and re-alleges Paragraphs 1-41 above.

43. At all times relevant herein, Officer Sosa and Police Officer Does 1-10 were acting under color of state law.

44. Officer Sosa and Police Officer Does 1-10 violated the plaintiff's rights under the Fourth Amendment when they imprisoned and arrested the plaintiff without probable cause, arguable probable cause, or other legal justification.

45. The elements of a claim for false imprisonment/false arrest under Section 1983 are substantially the same as under New York law.  These elements are:  (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement: and (4) the confinement was not otherwise privileged.

46. Officer Sosa and Police Officer Does 1-10 intended to, and did, confine Ms. Benn.

47. Ms. Benn was conscious of the confinement.

48. Ms. Benn did not consent to the confinement.

49. The confinement was not otherwise privileged.

50. There was no probable cause for Ms. Benn's imprisonment and arrest by Officer Sosa and Police Officer Does 1-10.

51. There was no arguable probable cause for Ms. Benn's imprisonment and arrest by Officer Sosa and Police Officer Does 1-10.

52. There was no other legal justification for Ms. Benn's imprisonment and arrest by Officer Sosa and Police Officer Does 1-10.

53. Officer Sosa and Police Officer Does 1-10 are not entitled to qualified immunity.

54. The plaintiff's rights under the Fourth Amendment were clearly established.

55. It was not objectively reasonable for Officer Sosa and Police Officer Does 1-10 to believe that their actions did not violate the plaintiff's rights when they imprisoned and arrested Ms. Benn.

56. Officer Sosa and Police Officer Does 1-10 acted with intentional, knowing, callous, and/or reckless indifference to the plaintiff's rights when they imprisoned and arrested Ms. Benn.

57. As a result of the defendants' unconstitutional conduct, the plaintiff has suffered loss of liberty, mental anguish, emotional distress, insult, embarrassment, humiliation, loss of enjoyment of life, property damage, and other compensable injuries, for which she is entitled to an award of compensatory damages.

58. The plaintiff also is entitled to an award of punitive damages to punish the police officer defendants for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## COUNT THREE: MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983
### (Section 1983; City of New York)

59. The plaintiff repeats and re-alleges Paragraphs 1-58 above.

60. Upon information and belief, the defendants' unconstitutional conduct alleged herein (unlawful search, false arrest) was ordered and/or conducted pursuant to an officially promulgated policy sanctioned or ordered by the New York City Police Department and the City of New York.

61. Upon information and belief, the defendants' unconstitutional conduct alleged herein (unlawful search, false arrest) was ordered and/or conducted pursuant to a pervasive custom or practice of the New York City Police Department that has been approved by the City of New York and/or that the City of New York is or should be aware of.

62. Upon information and belief, the defendants' unconstitutional conduct alleged herein (unlawful search, false arrest) was authorized by one or more high-ranking NYPD officials who have final policymaking authority in this area.

63. Upon information and belief, the City of New York was deliberately indifferent to the plaintiff's constitutional rights by failing to train and supervise the defendants in the proper and lawful performance of their duties.

64. As a result of the City of New York's culpable conduct in connection with the defendants' unconstitutional conduct alleged herein, the plaintiff has suffered loss of liberty, mental anguish, emotional distress, insult, embarrassment, humiliation, loss of enjoyment of life, property damage, and other compensable injuries, for which she is entitled to an award of compensatory damages.

## COUNT FOUR:  TRESPASS
### (New York law; all defendants)

65. The plaintiff repeats and re-alleges Paragraphs 1-64 above.

66. At all times relevant herein, Officer Sosa and Police Officer Does 1-10 were acting within the scope of their employment with the NYPD.

67. The elements of a claim for trespass under New York law are an unauthorized entry upon property of another.

68. Officer Sosa and Police Officer Does 1-10 made an unauthorized entry upon the plaintiff's property.

69. Officer Sosa and Police Officer Does 1-10 were not acting lawfully in furtherance of their public duties.

70. Officer Sosa and Police Officer Does 1-10 are not entitled to qualified immunity.

71. The defendants' actions were taken without a reasonable basis.

72. The defendants' actions were taken in bad faith.

73. The defendants' actions were intentional, wanton, and malicious.

74. As a result of the defendants' unlawful conduct, the plaintiff has suffered loss of liberty, mental anguish, emotional distress, insult, embarrassment, humiliation, loss of enjoyment of life, property damage, and other compensable injuries, for which she is entitled to an award of compensatory damages.

75. The plaintiff also is entitled to an award of punitive damages to punish the defendants for their unlawful conduct and to deter them from engaging in similar unlawful conduct in the future.

76. Because the defendants' actions were taken in the scope of their employment with the NYPD, the City of New York is vicariously liable for the harm caused by their tortious conduct.

## COUNT FIVE:  FALSE IMPRISONMENT/FALSE ARREST
### (New York law; all defendants)

77. The plaintiff repeats and re-alleges Paragraphs 1-76 above.

78. At all times relevant herein, Officer Sosa and Police Officer Does 1-10 were acting within the scope of their employment with the NYPD.

79. The elements of a claim for false imprisonment/false arrest under New York law are:  (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement: and (4) the confinement was not otherwise privileged.

80. Officer Sosa and Police Officer Does 1-10 intended to, and did, confine Ms. Benn.

81. Ms. Benn was conscious of the confinement.

82. Ms. Benn did not consent to the confinement.

83. The confinement was not otherwise privileged.

84. There was no probable cause for Ms. Benn's imprisonment and arrest by Officer Sosa and Police Officer Does 1-10.

85. There was no arguable probable cause for Ms. Benn's imprisonment and arrest by Officer Sosa and Police Officer Does 1-10.

86. There was no other legal justification for Ms. Benn's imprisonment and arrest by Officer Sosa and Police Officer Does 1-10.

87. Officer Sosa and Police Officer Does 1-10 are not entitled to qualified immunity.

88. The defendants' actions were taken without a reasonable basis.

89. The defendants' actions were taken in bad faith.

90. The defendants' actions were intentional, wanton, and malicious.

91. As a result of the defendants' unlawful conduct, the plaintiff has suffered loss of liberty, mental anguish, emotional distress, insult, embarrassment, humiliation, loss of enjoyment of life, property damage, and other compensable injuries, for which she is entitled to an award of compensatory damages.

92. The plaintiff also is entitled to an award of punitive damages to punish the defendants for their unlawful conduct and to deter them from engaging in similar unlawful conduct in the future.

93. Because the police officer defendants' actions were taken in the scope of their employment with the NYPD, the City of New York is vicariously liable for the harm caused by their tortious conduct.

**PRAYER FOR RELIEF**

WHEREFORE the Plaintiff demands judgment against the Defendants for:

A.   Compensatory damages in an amount no less than $500,000;

B.   Punitive damages in an amount no less than $500,000;

C.   Pre-judgment and post judgment interest;

D.   Attorney's fees, costs, and disbursements; and

E.   All other relief that the Plaintiff may be entitled to under law, or as justice may require.

Dated: March 20, 2012
       New York, New York

                              Respectfully submitted,

                              *Steven M. Warshawsky*
                    By:       _____
                              STEVEN M. WARSHAWSKY (SW 5431)
                              The Warshawsky Law Firm
                              Empire State Building
                              350 Fifth Avenue, 59th Floor
                              New York, NY  10118
                              Tel:  (212) 601-1980
                              Fax:  (212) 601-2610
                              Email:  smw@warshawskylawfirm.com
                              Website:  www.warshawskylawfirm.com